1   **BRODSKY & SMITH, LLC**
Evan J. Smith, Esquire (SBN 242352)
2   esmith@brodskysmith.com
Ryan P. Cardona, Esquire (SBN 302113)
3   rcardona@brodskysmith.com
9595 Wilshire Boulevard, Suite 900
4   Beverly Hills, CA 90212
Phone: (877) 534-2590
5   Facsimile: (310) 247-0160

6   *Attorneys for Plaintiff*

7

8   **IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

9

10  | JOHAN STOLTZ, on behalf of himself and all others similarly situated, | Case No.: |
11  | | |
| | |
12  | Plaintiff, | <u>CLASS ACTION</u> |
13  | vs. | CLASS ACTION COMPLAINT FOR: |
14  | PORTOLA PHARMACEUTICALS, INC., HOLLINGS C. RENTON, JEFFREY BIRD, LAURA BREGE, DENNIS FENTON, SCOTT GARLAND, JOHN H. JOHNSON, TED LOVE, DAVID C. STUMP, H. WARD WOLFF, | (1) Breach of Fiduciary Duties |
15  | | (2) Aiding and Abetting Breach of Fiduciary Duties |
16  | | (3) Violation of § 14 (e) of the Securities Exchange Act of 1934 |
17  | Defendants. | (4) Violation of § 14 (d) of the Securities Exchange Act of 1934 |
18  | | (5) Violation of § 20(a) of the Securities Exchange Act of 1934 |
19  | | DEMAND FOR JURY TRIAL |

20

21      Plaintiff, Johan Stoltz ("Plaintiff"), by his attorneys, on behalf of himself and those

22  similarly situated, files this action against the defendants, and alleges upon information and belief,

23  except for those allegations that pertain to him, which are alleged upon personal knowledge, as

24  follows:

25                          <u>**SUMMARY OF THE ACTION**</u>

26      1.    Plaintiff brings this stockholder class action on behalf of himself and all other

27  public stockholders of Portola Pharmaceuticals, Inc. ("Portola" or the "Company"), against Portola

28

and the Company's Board of Directors (the "Board" or the "Individual Defendants," collectively with the Company, the "Defendants"), for violations of Sections 14(e) and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act") and breaches of fiduciary duty as a result of Defendants' efforts to sell the Company to Alexion Pharmaceuticals, Inc. ("Parent"), and Odyssey Merger Sub, Inc. ("Merger Sub," and collectively with Parent, "Alexion") as a result of an unfair process for an unfair price, and to enjoin an upcoming tender offer on a proposed all cash transaction valued at approximately $1.41 billion (the "Proposed Transaction").

2.     The terms of the Proposed Transaction were memorialized in a May 5, 2020, filing with the Securities and Exchange Commission ("SEC") on Form 8-K attaching the definitive Agreement and Plan of Merger (the "Merger Agreement").   Under the terms of the Merger Agreement, a subsidiary of Alexion will commence a tender offer to acquire all of the outstanding shares of Portola's common stock at a price of $18 per share in cash.  As a result of the Proposed Transaction, Portola stockholders will be frozen out of any interest in the surviving entity.

3.     Thereafter, on May 27, 2020, Portola filed a Solicitation/Recommendation Statement on Schedule 14D-9 (the "Recommendation Statement") with the SEC in support of the Proposed Transaction.

4.     The Proposed Transaction is unfair and undervalued for a number of reasons. Significantly, the Recommendation Statement describes an insufficient process in which the Board rushed through an inadequate "sales process" in which the only end goal was a sale to Alexion, with no committee of independent Board members being created to run the sales process and a so-called "market check" for potentially interested third parties consisting of only outreach to one potentially interested third party.

5.     Such a sales process, or lack thereof, clearly indicates that the only end-goal acceptable to the Defendants was an acquisition of Portola by Alexion.

6.     In approving the Proposed Transaction, the Individual Defendants have breached their fiduciary duties of loyalty, good faith, due care and disclosure by, *inter alia*, (i) agreeing to sell Portola without first taking steps to ensure that Plaintiff and Class members (defined below)

would obtain adequate, fair and maximum consideration under the circumstances; and (ii) engineering the Proposed Transaction to benefit themselves and/or Alexion without regard for Portola public stockholders.  Accordingly, this action seeks to enjoin the Proposed Transaction and compel the Individual Defendants to properly exercise their fiduciary duties to Portola stockholders.

7.     Next, it appears as though the Board has entered into the Proposed Transaction to procure for themselves and senior management of the Company significant and immediate benefits with no thought to the Company's public stockholders.  For instance, pursuant to the terms of the Merger Agreement, upon the consummation of the Proposed Transaction, Company Board Members and executive officers will be able to exchange all Company equity awards for the merger consideration.

8.     Finally, in violation of the Exchange Act and their fiduciary duties, Defendants caused to be filed the materially deficient Recommendation Statement on May 27, 2020 with the SEC in an effort to solicit stockholders to tender their Portola shares in favor of the Proposed Transaction.   The Recommendation Statement is materially deficient, deprives Portola's stockholders of the information they need to make an intelligent, informed and rational decision of whether to tender their shares in favor of the Proposed Transaction.  As detailed below, the Recommendation Statement omits and/or misrepresents material information concerning, among other things: (a) the sales process and in particular certain conflicts of interest for management; (b) the financial projections for Portola, provided by Portola to the Company's financial advisor Centerview Partners LLC ("Centerview"); (c) the data and inputs underlying the financial valuation analyses, if any, that purport to support the fairness opinion of Centerview to the Company

9.     Absent judicial intervention, the Proposed Transaction will be consummated, resulting in irreparable injury to Plaintiff and the Class.  This action seeks to enjoin the Proposed Transaction or, in the event the Proposed Transaction is consummated, to recover damages resulting from violation of the federal securities laws by Defendants.

**PARTIES**

10.    Plaintiff is a citizen of Texas and, at all times relevant hereto, has been a Portola stockholder.

11.    Defendant Portola is a biopharmaceutical company that develops and commercializes novel therapeutics in the areas of thrombosis and other hematologic disorders and inflammation in the United States. Portola is incorporated under the laws of the State of Delaware and has its principal place of business at 270 E. Grand Avenue, Suite 22, South San Francisco, CA 94080.  Shares of Portola common stock are traded on the NasdaqGS under the symbol "PTLA."

12.    Defendant Hollings C. Renton ("Renton") has been a Director of the Company at all relevant times.  In addition, Renton serves as the Chairperson of the Board.

13.    Defendant Jeffrey Bird ("Bird") has been a director of the Company at all relevant times.

14.    Defendant Laura Brege ("Brege") has been a director of the Company at all relevant times.

15.    Defendant Dennis Fenton ("Fenton") has been a director of the Company at all relevant times.

16.    Defendant Scott Garland ("Garland") has been a director of the Company at all relevant times.

17.    Defendant John H. Johnson ("Johnson") has been a director of the Company at all relevant times.

18.    Defendant Ted Love ("Love") has been a director of the Company at all relevant times.

19.    Defendant David C. Stump ("Stump") has been a director of the Company at all relevant times.

20.    Defendant H. Ward Wolff ("Wolff") has been a director of the Company at all relevant times.

CLASS ACTION COMPLAINT

21.     Defendants identified in ¶¶ 12 - 20 are collectively referred to as the "Individual Defendants."

22.     Non-Party Parent is a biopharmaceutical company, develops and commercializes various therapeutic products. The company serves distributors, pharmacies, hospitals, hospital buying groups, and other healthcare providers in the United States, Europe, the Asia Pacific, and internationally. Parent was founded in 1992 and is headquartered in Boston, Massachusetts. Parent common stock is traded on the New York Stock Exchange ("NYSE") under the ticker symbol "ALXN."

23.     Non-Party Merger Sub is a wholly owned subsidiary of Parent created to effectuate the Proposed Transaction.

## JURISDICTION AND VENUE

24.     This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(e) and 20(a) of the Exchange Act.  This action is not a collusive one to confer jurisdiction on a court of the United States, which it would not otherwise have.

25.     Personal jurisdiction exists over each defendant either because the defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

26.     Venue is proper in this District pursuant to 28 U.S.C. § 1391, because Portola has its principal place of business is located in this District, and each of the Individual Defendants, as

CLASS ACTION COMPLAINT

Company officers or directors, has extensive contacts within this District.

## CLASS ACTION ALLEGATIONS

27.     Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23, individually and on behalf of the stockholders of Portola common stock who are being and will be harmed by Defendants' actions described herein (the "Class").  The Class specifically excludes Defendants herein, and any person, firm, trust, corporation or other entity related to, or affiliated with, any of the Defendants.

28.     This action is properly maintainable as a class action because:

a.   The Class is so numerous that joinder of all members is impracticable. According to the Recommendation Statement, as of May 190, 2020, there were over 78 million shares of common stock of Portola common stock outstanding. The actual number of public stockholders of Portola will be ascertained through discovery;

b.   There are questions of law and fact which are common to the Class, including *inter alia*, the following:

    i.   Whether Defendants have violated the federal securities laws;

    ii.   Whether Defendants made material misrepresentations and/or omitted material facts in the Recommendation Statement; and

    iii.   Whether Plaintiff and the other members of the Class have and will continue to suffer irreparable injury if the Proposed Transaction is consummated.

c.   Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature and will fairly and adequately protect the interests of the Class;

d.   Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class;

e.   The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for the party opposing the Class;

f.   Plaintiff anticipates that there will be no difficulty in the management of this litigation and, thus, a class action is superior to other available methods for the fair and efficient adjudication of this controversy; and

g.   Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole.

## THE INDIVIDUAL DEFENDANTS' FIDUCAIRY DUTIES

29.   By reason of the Individual Defendants' positions with the Company as officers and/or directors, said individuals are in a fiduciary relationship with Portola and owe the Company the duties of due care, loyalty, and good faith.

30.   By virtue of their positions as directors and/or officers of Portola, the Individual Defendants, at all relevant times, had the power to control and influence, and did control and influence and cause Portola to engage in the practices complained of herein.

31.   Each of the Individual Defendants are required to act with due care, loyalty, good faith and in the best interests of the Company.  To diligently comply with these duties, directors of a corporation must:

a.   act with the requisite diligence and due care that is reasonable under the circumstances;

b.   act in the best interest of the company;

c.   use reasonable means to obtain material information relating to a given action or decision;

d.  refrain from acts involving conflicts of interest between the fulfillment of their roles in the company and the fulfillment of any other roles or their personal affairs;

e.  avoid competing against the company or exploiting any business opportunities of the company for their own benefit, or the benefit of others; and

f.  disclose to the Company all information and documents relating to the company's affairs that they received by virtue of their positions in the company.

32.   In accordance with their duties of loyalty and good faith, the Individual Defendants, as directors and/or officers of Portola, are obligated to refrain from:

a.    participating in any transaction where the directors' or officers' loyalties are divided;

b.    participating in any transaction where the directors or officers are entitled to receive personal financial benefit not equally shared by the Company or its public stockholders; and/or

c.    unjustly enriching themselves at the expense or to the detriment of the Company or its stockholders.

33.   Plaintiff alleges herein that the Individual Defendants, separately and together, in connection with the Proposed Transaction, violated, and are violating, the fiduciary duties they owe to Portola, Plaintiff and the other public stockholders of Portola, including their duties of loyalty, good faith, and due care.

34.   As a result of the Individual Defendants' divided loyalties, Plaintiff and Class members will not receive adequate, fair or maximum value for their Portola common stock in the Proposed Transaction.

CLASS ACTION COMPLAINT

# SUBSTANTIVE ALLEGATIONS

*Company Background*

35.     Portola is a biopharmaceutical company, that develops and commercializes novel therapeutics in the areas of thrombosis and other hematologic disorders and inflammation in the United States.

36.     The Company offers Andexxa, an antidote for patients treated with rivaroxaban and apixaban when reversal of anticoagulation is needed due to life-threatening or uncontrolled bleeding; and Bevyxxa (betrixaban), an oral, once-daily Factor Xa inhibitor for the prevention of venous thromboembolism in adult patients hospitalized for an acute medical illness. It is also advancing cerdulatinib, a dual spleen tyrosine kinase and janus kinases inhibitor in development for the treatment of hematologic cancers. In addition, the company is developing PRT2761, a Syk inhibitor that has completed Phase II clinical trial for the treatment for allergic conjunctivitis. Portola's lead program, magrolimab, is a monoclonal antibody against the CD47 receptor, a "don't eat me" signal that cancer cells commandeer to avoid being ingested by macrophages. This antibody is currently being evaluated in multiple clinical studies in patients with myelodysplastic syndrome, acute myeloid leukemia, non-Hodgkin lymphoma, and solid tumors.

37.     The Company's most recent financial performance press release, revealing financial results from the quarter preceding the announcement of the Proposed Transaction, indicated sustained and solid financial performance.  For example, in a May 11, 2020 press release announcing its 2020 Q1 financial results, the Company highlighted such milestones as total global revenues for the first quarter of 2020 were $26.4 million compared with $22.2 million for the same period in 2019, a decrease in net loss, and a decrease in operating expenses.

38.     Speaking on these positive results, Chief Executive Officer, Scott Garland, commented on the Company's positive financial results as follows, "2020 started strong with January representing our highest month of Andexxa demand in the U.S. since launch, driven in part by a return of growth in our tier one accounts."

39.     Portola has seen exponential financial growth dating back to its record year in 2019. In its 2019 Q4 and Full Year 2019 financial results press release, Company noted its total global revenues for the fourth quarter of 2019 were $29.2 million compared with $15.3 million for the fourth quarter of 2018. As well as its total global revenues for the full year 2019 were $116.6 million compared with $40.1 million for the full year 2018, which includes $111.5 million in net product revenues from sales of Andexxa/Ondexxya, and $5.0 million in collaboration and license revenues.

40.     Speaking on these positive results, Garland, commented on the Company's positive financial results as follows, "2019 was a year of significant accomplishments for Portola with the launch of our Gen 2 formulation of Andexxa in the United States and the approval and launch of Ondexxya in Europe. In 2020 we have several catalysts that we expect to drive further adoption and growth worldwide. This includes the presentation of new clinical data, enhanced education and support related to reimbursement, the initiation of our urgent surgery study, and continued execution of the Ondexxya launch in Europe. Combined with the robust growth in the Factor Xa inhibitor market and our other strategic initiatives, we are confident that Andexxa has significant long-term growth potential."

41.     These positive results are not an anomaly, but rather, are indicative of a trend of continued financial success and future potential success by Portola.  Clearly, based upon these positive financial results and outlook, the Company is likely to have tremendous future success and should command a much higher consideration than the amount contained within the Proposed Transaction.

42.     Despite this upward trajectory and continually increasing financial results, the Individual Defendants have caused Portola to enter into the Proposed Transaction for insufficient consideration.

***The Flawed Sales Process***

43.     As detailed in the Recommendation Statement, the process deployed by the Individual Defendants was flawed and inadequate, was conducted out of the self-interest of the

1    Individual Defendants, and was designed with only one concern in mind – to effectuate a sale of

2    the Company to Alexion.

3         44.    First, the Recommendation Statement indicates that no committee of independent

4    board members was created to run the sales process.

5         45.    Furthermore, the Recommendation Statement indicates that only the most cursory

6    "market check" was conducted by Company and its financial advisors during the sales process,

7    reaching out to only one potentially interested third party.

8         46.    The Recommendation Statement is also unclear as to the nature of all specific

9    standstill restrictions arising out of the terms of any of the non-disclosure agreements entered into

10   between Portola on the one hand and either any interested third party, including Alexion, on the

11   other, and if the terms of any included "don't-ask, don't-waive" provisions or standstill provisions

12   in any such agreements, and if so, the specific conditions, if any, under which such provisions

13   would fall away.

14        47.    It is not surprising, given this background to the overall sales process, that it was

15   conducted in a completely inappropriate and misleading manner.

16   ***The Proposed Transaction***

17        48.    On May 5, 2020, Alexion and Portola issued a joint press release announcing the

18   Proposed Transaction.  The press release stated, in relevant part:

19

20   **BOSTON & SOUTH SAN FRANCISCO, Calif – MAY 5, 2020** - Alexion

21   Pharmaceuticals, Inc. (NASDAQ:ALXN) and Portola Pharmaceuticals, Inc.
     (NASDAQ:PTLA) announced today that they have entered into a definitive merger

22   agreement for Alexion to acquire Portola, a commercial-stage biopharmaceutical
     company focused on life-threatening blood-related disorders. Portola's

23   commercialized medicine, Andexxa® [coagulation factor Xa (recombinant),
     inactivated-zhzo], marketed as Ondexxya® in Europe, is the first and only approved

24   Factor Xa inhibitor reversal agent, and has demonstrated transformative clinical value
     by rapidly reversing the anticoagulant effects of Factor Xa inhibitors rivaroxaban and

25   apixaban in severe and uncontrolled bleeding. The acquisition will add near-term
     diversification to Alexion's commercial portfolio and provides the opportunity to

26   apply the company's demonstrated global commercial excellence to create long-term
     value for patients and shareholders. The merger agreement has been unanimously

27   approved by the boards of Alexion and Portola.

28

"The acquisition of Portola represents an important next step in our strategy to diversify beyond C5. Andexxa is a strategic fit with our existing portfolio of transformative medicines and is well-aligned with our demonstrated expertise in hematology, neurology and critical care," said Ludwig Hantson, Ph.D., Chief Executive Officer of Alexion. "We believe Andexxa has the potential to become the global standard of care for patients who experience life-threatening bleeds while taking Factor Xa inhibitors apixaban and rivaroxaban. By leveraging Alexion's strong operational and sales infrastructure and deep relationships in hospital channels, we are well positioned to expand the number of patients helped by Andexxa, while also driving value for shareholders."

"In developing and launching Andexxa, Portola has established a strong foundation for changing the standard of care for patients receiving Factor Xa inhibitors that experience a major, life-threatening bleed. Andexxa rapidly reverses the pharmacologic effect of rivaroxaban and apixaban within two minutes, reducing anti-Factor Xa activity by 92 percent," said Scott Garland, President and Chief Executive Officer of Portola. "Given their enhanced resources, global footprint and proven commercial expertise, we look forward to working with Alexion to maximize the value of Andexxa. With their commitment to commercial excellence, together, we will be able to drive stronger utilization of Andexxa, increase penetration and accelerate adoption in the critical care setting."

<u>Transaction Details</u>

Under the terms of the merger agreement, a subsidiary of Alexion will commence a tender offer to acquire all of the outstanding shares of Portola's common stock at a price of $18 per share in cash. The tender offer is subject to customary conditions, including the tender of a majority of the outstanding shares of Portola common stock, the expiration or termination of the waiting period under the Hart-Scott Rodino Antitrust Improvements Act of 1976 and receipt of certain other regulatory approvals.

Following successful completion of the tender offer, Alexion will acquire all remaining shares not tendered in the offer at the same price of $18 per share through a merger. The transaction is expected to close in the third quarter of 2020.

Alexion will fund the transaction with cash on hand. As part of the acquisition, Alexion will also be acquiring cash currently on Portola's balance sheet, net of debt of approximately $215 million that will become due upon closing. As of December 31, 2019, cash and short-term investments were approximately $430 million. The actual amounts will be determined as of the transaction close.

RBC Capital Markets, LLC served as Alexion's exclusive financial advisor. Centerview Partners served as Portola's exclusive financial advisor. Cooley LLP served as Portola's legal advisor.

CLASS ACTION COMPLAINT

*The Inadequate Merger Consideration*

49.     Significantly, the Company's financial prospects and opportunities for future growth, and synergies with Alexion establish the inadequacy of the merger consideration.

50.     First, the compensation afforded under the Proposed Transaction to Company stockholders significantly undervalues the Company.  The proposed valuation does not adequately reflect the intrinsic value of the Company.  Moreover, the valuation does not adequately take into consideration the Company's potential financial success with its launch of new products in just 2019 and early 2020 and their potential growth.

51.     Specifically, the Company's stock has traded as high as $32.11 per share within the past fifty-two weeks, and traded around $25.00 a share as recently as January 8, 2020, about $7.00 per share less than the consideration in Proposed Transaction.

52.     Additionally, Portola's future success is extremely likely, given the consistent positive financial results it has posted over the past several quarters.  Obviously, the opportunity to invest in such a company on the rise is a great coup for Alexion, however it undercuts the investment of Plaintiff and all other public stockholders.

53.     To be more specific, Biotechnology news source, FiercePharma, released an article about the Proposed Transaction in May 2020, noting, "The Portola buyout will take Alexion beyond a rare-disease portfolio dominated by blockbuster C5-inhibitor Soliris and follow-up drug Ultomiris. The centerpiece of the deal is a bleeding reversal agent, Andexxa, designed for patients using two common anticoagulant drugs, Xarelto and Eliquis. So far, Andexxa has delivered disappointing sales, but Alexion still sees promise—even if it'll take a while for that promise to pay off."  Such promise is likely to translate into strong financial success.

54.     Finally, the Proposed Transaction represents a significant synergistic benefit to Alexion, which operates in the same industry as Portola, and will use the new portfolio, operational capabilities, and brand capital to bolster its own position in the market.  Specifically, a May 7, 2020 BioPharma-Reporter article commented on Portola's benefits to Alexion, "With its lead product, Soliris, facing biosimilar competition in the coming years, having further products to draw

on could help the company dampen any drop in revenue." This quote followed comments regarding Portola bringing diversification to Alexion's portfolio, as said in the May 5, 2020 Press Release on the Proposed Transaction. Ultimately, outside of broadening Alexion's portfolio, the merger provides Alexion with a safety net for the foreseeable future, offering stability it might not have had were it not for Portola.

55.   Clearly, while the deal will be beneficial to Alexion it comes at great expense to Plaintiff and other public stockholders of the Company.

56.   Moreover, post-closure, Portola stockholders will be frozen out of any future benefit from their investment in Portola's bright future.

57.   It is clear from these statements and the facts set forth herein that this deal is designed to maximize benefits for Alexion at the expense of Portola stockholders, which clearly indicates that Portola stockholders were not an overriding concern in the formation of the Proposed Transaction.

*Preclusive Deal Mechanisms*

58.   The Merger Agreement contains certain provisions that unduly benefit Alexion by making an alternative transaction either prohibitively expensive or otherwise impossible. Significantly, the Merger Agreement contains a termination fee provision that is especially onerous and impermissible.  Notably, in the event of termination, the merger agreement requires Portola to pay up to $51.5 million to Alexion, if the Merger Agreement is terminated under certain circumstances.  Moreover, under one circumstance, Portola must pay this termination fee even if it consummates any competing company Takeover Proposal (as defined in the Merger Agreement) *within 12 months following the termination* of the Merger Agreement.  The termination fee will make the Company that much more expensive to acquire for potential purchasers.  The termination fee in combination with other preclusive deal protection devices will all but ensure that no competing offer will be forthcoming.

59.   The Merger Agreement also contains a "No Solicitation" provision that restricts Portola from considering alternative acquisition proposals by, *inter alia*, constraining Portola's

ability to solicit or communicate with potential acquirers or consider their proposals. Specifically, the provision prohibits the Company from directly or indirectly soliciting, initiating, proposing or inducing any alternative proposal, but permits the Board to consider an unsolicited bona fide written *"Takeover Proposal"* if it constitutes or is reasonably calculated to lead to a "*Superior Proposal*" as defined in the Merger Agreement.

60. Moreover, the Merger Agreement further reduces the possibility of a topping offer from an unsolicited purchaser. Here, the Individual Defendants agreed to provide Alexion information in order to match any other offer, thus providing Alexion access to the unsolicited bidder's financial information and giving Alexion the ability to top the superior offer. Thus, a rival bidder is not likely to emerge with the cards stacked so much in favor of Alexion.

61. These provisions, individually and collectively, materially and improperly impede the Board's ability to fulfill its fiduciary duties with respect to fully and fairly investigating and pursuing other reasonable and more valuable proposals and alternatives in the best interests of the Company and its public stockholders.

62. Accordingly, the Company's true value is compromised by the consideration offered in the Proposed Transaction.

### Potential Conflicts of Interest

63. The breakdown of the benefits of the deal indicate that Portola insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders. The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff and the public stockholders of Portola.

64. Certain insiders stand to receive massive financial benefits as a result of the Proposed Transaction. Notably, Company insiders, including the Individual Defendants, currently

own large, illiquid portions of Company stock that will be exchanged for large cash pay days upon the consummation of the Proposed Transaction, as follows:

| Name of Executive Officer or Director | Number of Shares Beneficially Owned(1) | Implied Cash Consideration for Shares |
|---|---|---|
| Scott Garland | 24,529 | 441,522.00 |
| Mardi C. Dier | 39,563 | 712,134.00 |
| John B. Moriarty, Jr. J.D. | 12,893 | 232,074.00 |
| Ernie W. Meyer | 9,541 | 171,738.00 |
| Sheldon L. Koenig | 5,075 | 91,350.00 |
| Glenn P. Brame | 7,651 | 137,718.00 |
| Rajiv Patni, M.D. | 0 | 0 |
| Jeffrey W. Bird, M.D., Ph.D. | 527,172 | 9,489,096.00 |
| H. Ward Wolff | 17,960 | 323,280.00 |
| Hollings C. Renton | 16,020 | 288,360.00 |
| John H. Johnson | 13,194 | 237,492.00 |
| Laura Brege | 13,194 | 237,492.00 |
| Dennis Fenton, Ph.D. | 13,194 | 237,492.00 |
| David C. Stump, M.D. | 13,194 | 237,492.00 |
| Ted W. Love, M.D. | 0 | 441,522.00 |
| All of our current executive officers and non-employee directors as a group (15 persons) | 713,180 | 12,837,240.00 |

65.     Furthermore, upon the consummation of the Proposed Transaction, each outstanding Company option or equity award, will be canceled and converted into the right to receive certain consideration according to the merger agreement, as follows:

| Name | Shares Underlying Vested In-the-Money Options (#)(1) | Value of Vested In-the-Money Options ($)(2) | Shares Underlying Accelerated In-the-Money Options (#)(3) | Value of Accelerated In-the-Money Options ($)(4) | Shares Underlying Portola Cash-Out RSUs (#)(5) | Value of Portola Cash-Out RSUs ($)(6) | Total Value ($)(7) |
|---|---|---|---|---|---|---|---|
| Scott Garland | 12,500 | 65,125.00 | 287,500 | 1,497,875.00 | 0 | — | 1,563,000.00 |
| Mardi C. Dier | 4,062 | 21,163.02 | 93,438 | 486,811.98 | 0 | — | 507,975.00 |
| John B. Moriarty, Jr., J.D. | 4,062 | 21,163.02 | 93,438 | 486,811.98 | 0 | — | 507,975.00 |
| Ernie W. Meyer | 4,062 | 21,163.02 | 93,438 | 486,811.98 | 0 | — | 507,975.00 |
| Sheldon L. Koenig | 4,062 | 21,163.02 | 93,438 | 486,811.98 | 0 | — | 507,975.00 |
| Glenn P. Brame | 4,062 | 21,163.02 | 93,438 | 486,811.98 | 0 | — | 507,975.00 |
| Rajiv Patni, M.D. | 0 | — | 125,000 | 986,250.00 | 0 | — | 986,250.00 |
| Jeffrey W. Bird, M.D., Ph.D. | 0 | — | 0 | — | 0 | — | — |
| H. Ward Wolff | 10,520 | 115,720.00 | 0 | — | 0 | — | 115,720.00 |
| Hollings C. Renton | 0 | — | 0 | — | 0 | — | — |
| John H. Johnson | 0 | — | 0 | — | 0 | — | — |
| Laura Brege | 0 | — | 0 | — | 0 | — | — |
| Dennis Fenton, Ph.D. | 0 | — | 0 | — | 0 | — | — |
| David C. Stump, M.D. | 0 | — | 0 | — | 0 | — | — |
| Ted W. Love, M.D. | 0 | — | 0 | — | 8,294 | 149,292.00 | 149,292.00 |
| All of our current executive officers and non-employee directors as a group (15 persons) | 43,330 | $286,660.10 | 879,690 | $4,918,184.90 | 8,294 | $149,292.00 | $5,354,137.00 |

66. Additionally, upon the consummation of the Proposed Transaction, each outstanding Company RSUs or PSUs, will be canceled and converted into the right to receive certain consideration according to the merger agreement, as follows:

| Name | Shares Underlying Portola Rollover RSUs (#)(1) | Acceleration Value of Portola Rollover RSUs ($)(2) | Shares Underlying Portola PSUs (#)(3) | Acceleration Value of Portola PSUs ($)(4) | Total Acceleration Value ($)(5) |
|---|---|---|---|---|---|
| Scott Garland | 153,399 | 2,761,182.00 | 100,000 | 1,800,000.00 | 4,561,182.00 |
| Mardi C. Dier | 32,291 | 581,238.00 | 48,750 | 877,500.00 | 1,458,738.00 |
| John B. Moriarty, Jr., J.D. | 37,083 | 667,494.00 | 48,750 | 877,500.00 | 1,544,994.00 |
| Ernie W. Meyer | 48,750 | 877,500.00 | 48,750 | 877,500.00 | 1,755,000.00 |
| Sheldon L. Koenig | 32,916 | 592,488.00 | 48,750 | 877,500.00 | 1,469,988.00 |
| Glenn P. Brame | 42,916 | 772,488.00 | 48,750 | 877,500.00 | 1,649,988.00 |
| Rajiv Patni, M.D. | 35,000 | 630,000.00 | 0 | 0.00 | 630,000.00 |

67. Moreover, certain employment agreements with certain Portola executives, entitle such executives to severance packages should their employment be terminated under certain circumstances.  These 'golden parachute' packages are significant, and will grant each director or officer entitled to them millions of dollars, compensation not shared by Portola's common stockholders, as follows:

68. These payouts will be paid to Portola insiders, as a consequence of the Proposed Transaction's consummation, as follows:

| Golden Parachute Compensation(1) | | | | | |
|---|---|---|---|---|---|
| Name | Cash ($)(2) | Equity ($)(3) | Perquisites/ Benefits ($)(4) | Tax Reimbursement ($)(5) | Total ($)(6) |
| Scott Garland | 2,548,156 | 6,059,057 | 79,389 | 3,125,221 | 11,811,823 |
| Mardi Dier | 1,079,066 | 1,945,550 | 27,626 | — | 3,052,242 |
| John B. Moriarty, Jr. | 1,068,383 | 2,031,806 | 46,912 | — | 3,147,101 |
| Ernie W. Meyer | 897,442 | 2,241,812 | 30,764 | — | 3,170,018 |
| Sheldon L. Koenig | 924,562 | 1,956,800 | 27,626 | 1,144,666 | 4,053,654 |

69. Thus, while the Proposed Transaction is not in the best interests of Portola stockholders, it will produce lucrative benefits for the Company's officers and directors.

CLASS ACTION COMPLAINT

***The Materially Misleading and/or Incomplete*** Recommendation Statement

70.     On May 27, 2020, the Portola Board caused to be filed with the SEC a materially misleading and incomplete Recommendation Statement that, in violation of their fiduciary duties and federal securities laws, failed to provide the Company's stockholders with material information and/or provides them with materially misleading information critical to the total mix of information available to the Company's stockholders concerning the financial and procedural fairness of the Proposed Transaction.

*Omissions and/or Material Misrepresentations Concerning the Sales Process leading up to the Proposed Transaction*

71.     Specifically, the Recommendation Statement fails to provide material information concerning the process conducted by the Company and the events leading up to the Proposed Transaction.  In particular, the Recommendation Statement fails to disclose:

   a.  The nature of any specific standstill restrictions arising out of the terms of any of the non-disclosure agreements entered into between Portola on the one hand and either any interested third party, including Alexion, on the other, and if the terms of any included "don't-ask, don't-waive" provisions or standstill provisions in any such agreements, and if so, the specific conditions, if any, under which such provisions would fall away;

   b.  The specific reasoning as to why only one potentially interested third party was contacted throughout the sales process;

   c.  The specific reasoning as to why no committee of independent directors was created to run the sales process;

   d.  Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides

illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

*Omissions and/or Material Misrepresentations Concerning Portola's Financial Projections*

72.    The Recommendation Statement fails to provide material information concerning financial projections provided by Portola management and relied upon by Centerview in its analyses.  The Recommendation Statement discloses management-prepared financial projections for the Company which are materially misleading.

73.    The Recommendation Statement indicates that in connection with the rendering of Centerview's fairness opinion, Centerview reviewed, "certain internal information relating to the business, operations, earnings, cash flow, assets, liabilities and prospects of the Company, including certain financial forecasts, analyses and projections relating to the Company prepared by management of the Company and furnished to Centerview by the Company for purposes of Centerview's analysis, which are referred to in this summary of Centerview's opinion as the "**Forecasts**," and which are collectively referred to in this summary of Centerview's opinion as the "**Internal Data**."

74.    Accordingly, the Recommendation Statement should have, but fails to provide, certain information in the projections that Portola management provided to the Board and Centerview.  Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors.  Investors can come up with their own estimates of discount rates or [] market multiples.  What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

75.    With respect to the "*Initial Long-Term Plan*" projections and the "*Updated Long-Term Plan*" projections, the Recommendation Statement fails to disclose:

a. All line items used to calculate:

    i. EBIT, including:

        1. How management's stock-based compensation was calculated to derive the EBIT Figures, including whether stock-based compensation was treated as a cash or non-cash expense.

    ii. Unlevered Free Cash Flow, including:

        1. The inputs and assumptions used to assume a tax rate of 21%.

b. A reconciliation of all non-GAAP to GAAP metrics, including:

    i. EBIT, including:

        1. How management's stock-based compensation was calculated to derive the EBIT Figures, including whether stock-based compensation was treated as a cash or non-cash expense

    ii. Unlevered Free Cash Flow, including:

        1. The inputs and assumptions used to assume a tax rate of 21%

76. This information is necessary to provide Company stockholders a complete and accurate picture of the sales process and its fairness. Without this information, stockholders were not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

77. Without accurate projection data presented in the Recommendation Statement, Plaintiff and other stockholders of Portola are unable to properly evaluate the Company's true worth, the accuracy of Centerview's financial analyses, or make an informed decision whether to

tender their Company stock in favor of the Proposed Transaction.  As such, the Board has breached their fiduciary duties by failing to include such information in the Recommendation Statement.

> *Omissions and/or Material Misrepresentations Concerning the Financial Analyses by Centerview*

78.     In the Recommendation Statement, Centerview describes its respective fairness opinion and the various valuation analyses performed to render such opinion.  However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions.  Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinions.

79.     With respect to the *Selected Public Companies Analysis*, the Recommendation Statement fails to disclose the following:

> a.   The specific reasoning as for choosing each comparable company; and
>
> b.   The total enterprise value for each comparable company and the line-items used to calculate it.

80.     With respect to the *Selected Precedent Transactions Analysis*, the Recommendation Statement fails to disclose the following:

> a.   The total value of each selected transaction;
>
> b.   The specific date on which each selected transaction closed; and

81.     With respect to the Centerview's analysis of stock price targets, the Recommendation Statement fails to disclose the following:

> a.   The price targets observed in the analysis; and
>
> b.   The sources for the price targets.

82.     With respect to the *Discounted Cash Flow Analysis*, the Recommendation Statement fails to disclose the following:

CLASS ACTION COMPLAINT

a.   The specific inputs and assumptions used to calculate the assumed unlevered free cash flow declination rate after December 31, 2032 between 30.0% and 20.0% year-over-year.

b.   The specific inputs and assumptions used to calculate the range of discount rates from 9.5% to 11.5% using a mid-year convention, including:

    i.   Portola's weighted average cost of capital;

    ii.   The inputs and assumptions utilized to assume a tax rate of 21%;

    iii.

    iv.   The inputs and assumptions used to calculate the range of discount rates from 9.5% to 11.5% applied to the expected receipt of partnership upfront payments as if received on January 1, 2021;

    v.   The inputs and assumptions used to calculate assumed net debt as of June 30, 2020 of $162 million.

c.   The specific reasoning of why the Company directed Centerview to assume a condition of the Company raising $100 million in gross proceeds as a result of issuance of equity securities at $7 per share in 2020, whether this was likely to occur in actuality, and if any other DCF was conducted without this precondition attached.

d.   The total number of the Company's fully diluted shares outstanding as of May 1, 2020.

83.   These disclosures are critical for stockholders to be able to make an informed decision on whether to tender their shares in favor of the Proposed Transaction.

84.   Without the omitted information identified above, Portola's public stockholders are missing critical information necessary to evaluate whether the proposed consideration truly

CLASS ACTION COMPLAINT

maximizes stockholder value and serves their interests.  Moreover, without the key financial information and related disclosures, Portola's public stockholders cannot gauge the reliability of the fairness opinion and the Board's determination that the Proposed Transaction is in their best interests.  As such, the Board has breached their fiduciary duties by failing to include such information in the Preliminary Stockholders.

**FIRST COUNT**

**Claim for Breach of Fiduciary Duties**

**(Against the Individual Defendants)**

85.     Plaintiff repeats all previous allegations as if set forth in full herein.

86.     The Individual Defendants have violated their fiduciary duties of care, loyalty and good faith owed to Plaintiff and the Company's public stockholders.

87.     By the acts, transactions and courses of conduct alleged herein, Defendants, individually and acting as a part of a common plan, are attempting to unfairly deprive Plaintiff and other members of the Class of the true value of their investment in Portola.

88.     As demonstrated by the allegations above, the Individual Defendants failed to exercise the care required, and breached their duties of loyalty and good faith owed to the stockholders of Portola by entering into the Proposed Transaction through a flawed and unfair process and failing to take steps to maximize the value of Portola to its public stockholders.

89.     Indeed, Defendants have accepted an offer to sell Portola at a price that fails to reflect the true value of the Company, thus depriving stockholders of the reasonable, fair and adequate value of their shares.

90.     Moreover, the Individual Defendants breached their duty of due care and candor by failing to disclose to Plaintiff and the Class all material information necessary for them to make an informed decision on whether to tender their shares in favor of the Proposed Transaction.

91.     The Individual Defendants dominate and control the business and corporate affairs of Portola, and are in possession of private corporate information concerning Portola's assets, business and future prospects.  Thus, there exists an imbalance and disparity of knowledge and

economic power between them and the public stockholders of Portola which makes it inherently unfair for them to benefit their own interests to the exclusion of maximizing stockholder value.

92.     By reason of the foregoing acts, practices and course of conduct, the Individual Defendants have failed to exercise due care and diligence in the exercise of their fiduciary obligations toward Plaintiff and the other members of the Class.

93.     As a result of the actions of the Individual Defendants, Plaintiff and the Class will suffer irreparable injury in that they have not and will not receive their fair portion of the value of Portola's assets and have been and will be prevented from obtaining a fair price for their common stock.

94.     Unless the Individual Defendants are enjoined by the Court, they will continue to breach their fiduciary duties owed to Plaintiff and the members of the Class, all to the irreparable harm of the Class.

95.     Plaintiff and the members of the Class have no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury which Defendants' actions threaten to inflict.

### SECOND COUNT

### Aiding and Abetting the Board's Breaches of Fiduciary Duty

### (Against Defendant Portola)

96.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

97.     Defendants Portola knowingly assisted the Individual Defendants' breaches of fiduciary duty in connection with the Proposed Transaction, which, without such aid, would not have occurred.

98.     As a result of this conduct, Plaintiff and the other members of the Class have been and will be damaged in that they have been and will be prevented from obtaining a fair price for their shares.

99.     Plaintiff and the members of the Class have no adequate remedy at law.

**THIRD COUNT**

**Violations of Section 14(e) of the Exchange Act**

**(Against All Defendants)**

100.    Plaintiff repeats all previous allegations as if set forth in full herein.

101.    Defendants have disseminated the Recommendation Statement with the intention of soliciting stockholders to tender their shares in favor of the Proposed Transaction.

102.    Section 14(e) of the Exchange Act provides that in the solicitation of shares in a tender offer, "[i]t shall be unlawful for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading[.]"

103.    The Recommendation Statement was prepared in violation of Section 14(e) because it is materially misleading in numerous respects and omits material facts, including those set forth above.  Moreover, in the exercise of reasonable care, Defendants knew or should have known that the Recommendation Statement is materially misleading and omits material facts that are necessary to render them non-misleading.

104.    The Individual Defendants had actual knowledge or should have known of the misrepresentations and omissions of material facts set forth herein.

105.    The Individual Defendants were at least negligent in filing a Recommendation Statement that was materially misleading and/or omitted material facts necessary to make the Recommendation Statement not misleading.

106.    The misrepresentations and omissions in the Recommendation Statement are material to Plaintiff and the Class, and Plaintiff and the Class will be deprived of his entitlement to decide whether to tender their shares on the basis of complete information if such misrepresentations and omissions are not corrected prior to the expiration of the tender offer period regarding the Proposed Transaction.

CLASS ACTION COMPLAINT

**FOURTH COUNT**

**Violations of Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9**

**<u>(Against All Defendants)</u>**

107.　Plaintiff repeats all previous allegations as if set forth in full herein.

108.　Defendants have caused the Recommendation Statement to be issued with the intention of soliciting stockholder support of the upcoming tender offer.

109.　Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9 promulgated thereunder require full and complete disclosure in connection with tender offers.　Specifically, Section 14(d)(4) provides that:

> Any solicitation or recommendation to the holders of such a security to accept or reject a tender offer or request or invitation for tenders shall be made in accordance with such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

110.　SEC Rule 14d-9(d), which was adopted to implement Section 14(d)(4) of the Exchange Act, provides that:

> Information required in solicitation or recommendation.　Any solicitation or recommendation to holders of a class of securities referred to in section 14(d)(1) of the Act with respect to a tender offer for such securities shall include the name of the person making such solicitation or recommendation and the information required by Items 1 through 8 of Schedule 14D-9 (§ 240.14d-101) or a fair and adequate summary thereof.

111.　In accordance with Rule 14d-9, Item 8 of a Schedule 14D-9 requires a Company's directors to:

> Furnish such additional information, if any, as may be necessary to make the required statements, in light of the circumstances under which they are made, not materially misleading.

112.　The omission of information from a recommendation statement will violate Section 14(d)(4) and Rule 14d-9(d) if other SEC regulations specifically require disclosure of the omitted information.

113.　The Recommendation Statement violates Section 14(d)(4) and Rule 14d-9 because it omits material facts, including those set forth above, which omissions render the

Recommendation Statement false and/or misleading. Defendants knowingly or with deliberate recklessness omitted, the material information identified above from the Recommendation Statement, causing certain statements therein to be materially incomplete and therefore misleading. Indeed, while Defendants undoubtedly had access to and/or reviewed the omitted material information in connection with approving the Proposed Transaction, they allowed it to be omitted from the Recommendation Statement, rendering certain portion of the Recommendation Statement materially incomplete and therefore misleading.

114.    The misrepresentations and omissions in the Recommendation Statement are material to Plaintiff, and Plaintiff will be deprived of his entitlement to make a fully informed decision on whether to tender his Company stock if such misrepresentations and omissions are not corrected prior to the expiration of the tender offer underlying the Proposed Transaction.

### FIFTH COUNT

### Violations of Section 20(a) of the Exchange Act

### (Against All Individual Defendants)

115.    Plaintiff repeats all previous allegations as if set forth in full herein.

116.    The Individual Defendants were privy to non-public information concerning the Company and its business and operations via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith. Because of their possession of such information, the Individual Defendants knew or should have known that the Recommendation Statement was materially misleading to Company stockholders.

117.    The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the materially false and misleading statements complained of herein. The Individual Defendants were aware or should have been aware that materially false and misleading statements

were being issued by the Company in the Recommendation Statement and nevertheless approved, ratified and/or failed to correct those statements, in violation of federal securities laws. The Individual Defendants were able to, and did, control the contents of the Recommendation Statement. The Individual Defendants were provided with copies of, reviewed and approved, and/or signed the Recommendation Statement before its issuance and had the ability or opportunity to prevent its issuance or to cause it to be corrected.

118.     The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of Portola's business, the information contained in its filings with the SEC, and its public statements. Because of their positions and access to material non-public information available to them but not the public, the Individual Defendants knew or should have known that the misrepresentations specified herein had not been properly disclosed to and were being concealed from the Company's stockholders and that the Recommendation Statement was misleading. As a result, the Individual Defendants are responsible for the accuracy of the Recommendation Statement and are therefore responsible and liable for the misrepresentations contained herein.

119.     The Individual Defendants acted as controlling persons of Portola within the meaning of Section 20(a) of the Exchange Act. By reason of their position with the Company, the Individual Defendants had the power and authority to cause Portola to engage in the wrongful conduct complained of herein. The Individual Defendants controlled Portola and all of its employees. As alleged above, Portola is a primary violator of Section 14 of the Exchange Act and SEC Rule Recommendation Statement. By reason of their conduct, the Individual Defendants are liable pursuant to section 20(a) of the Exchange Act.

WHEREFORE, Plaintiff demands injunctive relief, in his favor and in favor of the Class, and against the Defendants, as follows:

A.      Ordering that this action may be maintained as a class action and certifying Plaintiff as the Class representatives and Plaintiff's counsel as Class counsel;

B.      Enjoining the Proposed Transaction;

C.      In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff and the Class;

D.      Declaring and decreeing that the Merger Agreement was agreed to in breach of the fiduciary duties of the Individual Defendants and is therefore unlawful and unenforceable;

E.      Directing the Individual Defendants to exercise their fiduciary duties to commence a sale process that is reasonably designed to secure the best possible consideration for Portola and obtain a transaction which is in the best interests of Portola and its stockholders;

F.      Directing defendants to account to Plaintiff and the Class for damages sustained because of the wrongs complained of herein;

G.      Awarding Plaintiff, the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

H.      Granting such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury on all issues which can be heard by a jury.

Dated: June 3, 2020

**BRODSKY & SMITH, LLC**

By: *Evan J. Smith*

Evan J. Smith, Esquire (SBN 242352)
esmith@brodskysmith.com
Ryan P. Cardona, Esquire (SBN 302113)
rcardona@brodskysmith.com
9595 Wilshire Blvd., Ste. 900
Phone: (877) 534-2590
Facsimile (310) 247-0160

*Attorneys for Plaintiff*

CLASS ACTION COMPLAINT